Edward Wayne SANDERS Appellant,

v.

The STATE of Texas Appellee.

No. 6–86–005–CR.

Court of Appeals of Texas,
Texarkana.

March 4, 1987.

Discretionary Review Granted
July 8, 1987.

See also 727 S.W.2d 674.

Gary L. Waite, Paris, for appellant.

Tom Wells, Dist. Atty., Paris, for appellee.

CORNELIUS, Chief Justice.

Edward Wayne Sanders appeals his conviction for aggravated sexual assault of a child. He complains of a jury instruction on the parole law, a portion of the jury charge regarding the date of the offense, and the overruling of his motion for change of venue. He also challenges the competency of the three-and-a-half-year-old complaining witness, and argues that the evidence is insufficient to support the conviction. We find these contentions to be without merit and affirm the conviction.

Pursuant to Tex.Code Crim.Proc.Ann. art. 37.07, § 4(a) (Vernon Supp.1987), the jury was instructed as follows:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the sentence imposed through the award of good conduct time. Prison authorities

may award good conduct time to a prisoner who exhibits good behaviour, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-third of the sentence imposed or 20 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

Sanders argues that it was fundamental error to give the instruction because the statute requiring it violates the due process and separation of powers doctrines of the United States and Texas Constitutions, and because the instruction is misleading and is not authorized by the statute. We disagree. Identical contentions have been raised and rejected in our sister courts, and we adopt the reasoning and holdings of those courts in approving the instruction. *See Rose v. State*, 724 S.W. 832 (Tex.App. —Dallas 1986); *Joslin v. State*, 722 S.W.2d 725 (Tex.App.—Dallas, 1986) (not yet reported); *Zaragosa v. State*, 721 S.W.2d 429 (Tex.App.—Corpus Christi, 1986) (not yet reported); *Clark v. State*, 721 S.W.2d 424 (Tex.App.—Houston [1st Dist.], 1986) (not yet reported); *Patton v. State*, 717 S.W.2d 772 (Tex.App.—Fort Worth, 1986) (not yet reported).

■ Sanders also complains about a portion of the jury charge which told the jury that they could find Sanders guilty if he committed the offense on or about August 1, 1985. "On or about" was defined as "any date within the 5 years immediately preceeding (sic) the return of the indictment in this case." Sanders argues that the charge permits the jury to find him guilty of a first degree felony at a time (i.e., prior to September 1, 1981) when the acts complained of constituted a second degree felony, and consequently constitutes an ex post facto application of the law. His argument is based on the 1981 amendment to Tex.Penal Code Ann. § 21.-03, which raised the penalty for the offense of aggravated rape from a second to a first degree felony. Act of April 30, 1981, Ch. 96, § 1, 1981, Tex.Gen.Laws 203 and Act of May 25, 1981, Ch. 202, § 1, 1981, Tex.Gen. Laws 471, *repealed by* Act of May 27, 1983, Ch. 977, § 3, 1983, Tex.Gen.Laws 5315. (The offense of aggravated rape is now known as aggravated sexual assault.) Tex.Penal Code Ann. § 22.021 (Vernon Supp.1987).

It was undisputed that the act alleged against Sanders was committed on or very near to August 1, 1985. In fact, the victim did not even attend the day care center where the events occurred until January of 1985. Under the circumstances, any error in the definition of the phrase "on or about" did not prejudice Sanders and was harmless beyond a reasonable doubt. *Arline v. State*, 721 S.W.2d 348 (Tex.Crim. App.1986) (not yet reported); *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1985); Tex.R.App.P. 81(b)(2).

Sanders' next two points allege error in the trial court's refusal to grant his motion for change of venue.

A pretrial motion for change of venue was filed based on allegations of extensive media publicity. There were three supporting affidavits. The State's answer was supported by four affidavits. At the hearing of the motion Sanders' three witnesses testified they believed he could not receive a fair trial in Lamar County. The State's four witnesses believed that he could.

A change of venue is available to assure a fair trial when extensive pretrial publicity has created substantial doubt regarding the impartiality of a jury. *Henley v. State,* 576 S.W.2d 66 (Tex.Crim.App.1978). Pretrial publicity alone, however, does not establish the requisite prejudice, *Freeman v. State,* 556 S.W.2d 287 (Tex.Crim.App.1977), *cert. denied,* 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794 (1978), and it is not necessary that the jurors be totally isolated from publicity about the case. *Eckert v. State,* 623 S.W.2d 359 (Tex.Crim.App.1981). The publicity must be pervasive, prejudicial and inflammatory, *Phillips v. State,* 701 S.W.2d 875 (Tex.Crim.App.1985), and unless the defendant shows there is such prejudice in the community that the likelihood of obtaining a fair and impartial jury is doubtful, the trial court does not abuse its discretion by denying the motion. *Nethery v. State,* 692 S.W.2d 686 (Tex.Crim.App. 1985); *Ussery v. State,* 651 S.W.2d 767 (Tex.Crim.App.1983).

Evidence in this case concerning media publicity is scant. No newspaper article or transcription of radio broadcast was offered by Sanders, and it appears that reports about the case were nothing more than fair, accurate and informative public recitals of the events which transpired. In addition, although the jurors had heard or read of the case, they stated that they had not been influenced and they had formed no opinion on Sanders' guilt or innocence. We find that Sanders failed to meet his burden to show such great public prejudice as would prevent him from receiving a fair trial. *Bell v. State,* 582 S.W.2d 800 (Tex.

Crim.App.1979), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981).

Sanders also attacks the validity of the State's controverting affidavits on the venue question. This point is based on the fact that at the venue hearing the State's affiants testified they did not know all of the parties who filed affidavits for Sanders. Each of them did, however, know at least one of Sanders' affiants.

The State's affidavits challenged the *means* of knowledge of Sanders' affiants, as well as the credibility of those affiants, and they therefore satisfied the requirements of Tex.Code Crim.Proc.Ann. art. 31.-04 (Vernon 1966). *Alvarado v. State,* 709 S.W.2d 339 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd); *Montgomery v. State,* 704 S.W.2d 359 (Tex.App.—Corpus Christi 1985, pet. ref'd). Moreover, Sanders did not object to the State's witnesses' testimony and therefore waived any complaint regarding the sufficiency of the State's affidavits. *Lott v. State,* 662 S.W.2d 450 (Tex.App.—Corpus Christi 1983, pet. dism'd).

Finally, Sanders argues that the child victim was not competent as a witness, and with her testimony disregarded there is insufficient evidence to support the conviction.

The determination of a witness' competency is within the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is shown. *Garcia v. State,* 573 S.W.2d 12 (Tex.Crim.App.1978); *Fields v. State,* 500 S.W.2d 500 (Tex.Crim.App.1973); *Rhea v. State,* 705 S.W.2d 165 (Tex.App.—Texarkana 1985, pet. ref'd). At the time of this trial the test for competency was whether the child possessed sufficient intellect to relate the transaction about which she was interrogated and whether she understood the obligation of an oath to tell the truth. Tex.Code Crim.Proc.Ann. art. 38.06(2) (Vernon 1979).[1]

---

1. Article 38.06 has been repealed. The requirements for competency are now contained in Tex.R.Crim.Evid. 601, effective September 1, 1986. The new rule eliminates the language

requiring that children understand the obligation of an oath. Under the new rule a child must demonstrate sufficient intellect to relate the transaction. In addition, all witnesses are

In determining competency we may review the entire testimony of the witness, not just that given at the competency hearing, *Clark v. State,* 558 S.W.2d 887 (Tex. Crim.App.1977), and the fact that there are inconsistencies in a child's testimony or there is testimony in response to leading questions does not in itself render the witness incompetent. *Clark v. State,* supra.

The victim was three and a half years old when she testified. An indication of her recognition of the truth and that she had an obligation to tell the truth is shown by the following:

Q. Ashley, do you know what it means to tell the truth?

A. Uh-huh.

Q. Okay. Let me ask you this: What is this I'm holding up?

A. A hand.

Q. And, if I told you this was my foot, would I be telling the truth?

A. No.

Q. What happens when you don't tell the truth?

A. You get a whipping.

. . . .

Q. Ashley, do you know that you have to tell the truth here today?

A. Yes.

. . . .

Q. Do you understand how you must listen to the question and answer the question with the truth, okay?

A. Okay.

. . . .

Q. Now, then, if we ask you some questions are you going to sit real still and listen? You're going to have to speak to me.

A. Yeah.

Q. And, if you don't tell the truth what's going to happen to you?

A. A whipping.

Q. Who is going to whip you?

A. Momma.

Q. What does the truth mean? To tell the truth, what does that mean?

A. Momma says to mind.

Q. We didn't hear you.

A. Momma says to mind.

Q. What is it when you don't tell the truth?

A. A whipping.

Q. Now, but I mean, are you—you said a whipping: Okay. But, what are you doing if you don't tell the truth?

A. I don't know.

Q. Did your mother ever tell you that's telling a falsehood or lie?

A. Yeah.

In addition, her other testimony proved that she had the ability to relate transactions accurately and fully. She was able to make an in-court identification of Sanders and give a clear recital of the events in question. While there are inconsistencies in her testimony, mostly on cross-examination, the overall effect of all her testimony is that she possessed the requisite maturity and accuracy of recollection to be a competent witness concerning the events which transpired, especially since those events constituted an assault against her own person rather than events she might have merely observed. *See Rhea v. State,* 705 S.W.2d 165, 171 (Cornelius, C.J., dissenting). The trial court's finding of competency did not constitute an abuse of discretion. As the victim's testimony was competent, there was sufficient evidence to support the conviction.

All of the points of error are respectfully overruled, and the judgment of the trial court is affirmed.

---

required to declare that they will testify truthfully, by oath or affirmation, in a form calculated to awaken the conscience and impress the mind with the duty to do so. Tex.R.Crim.Evid. 603.